***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and over the subject matter.
2. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties.
3. On 19 December 2002, defendant-employer employed more than 3 employees.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. An employer-employee relationship existed between plaintiff-employee and defendant-employer at all relevant times, including 19 December 2002.
6. Defendant-employer provided its employees with workers' compensation insurance coverage through Penn National Insurance Company on 19 December 2002.
7. On 19 December 2002, plaintiff was employed by defendant-employer at an average weekly wage to be determined by the filing of an Industrial Commission Form 22 Wage Chart.
8. Plaintiff last worked for defendant-employer on 19 December 2002.
9. Plaintiff has not received any total disability compensation, temporary partial disability compensation, permanent partial disability compensation, or permanent total disability compensation.
10. At the hearing, the parties submitted a Notebook of Stipulated Documents, which was admitted into the record, and marked as Stipulated Exhibit (2).
11. The issues to be determined are whether plaintiff sustained a compensable injury by accident to his back in the course of his employment on or about 19 December 2002 and, if so, to what benefits, if any, is he entitled.
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date before the Deputy Commissioner, plaintiff was 61 years of age, with his date of birth being 31 January 1942. Plaintiff testified that he went to school, but did not complete the sixth grade, and that he has difficulty reading and writing.
2. At the time of the incident giving rise to this claim, plaintiff had been employed as a mechanic by defendant-employer since June 2000. In this capacity, plaintiff installed air conditioners, which required him to stand, bend, squat, and lift items weighing up to 400 pounds. When lifting these heavier items, plaintiff would lift one end of the item, with a co-worker at the other end.
3. On 19 December 2002, plaintiff was lifting one end of an air conditioner unit weighing between 200-400 pounds so that a co-worker could place blocks underneath the unit. Plaintiff testified that while performing this duty, he experienced a pulling sensation in his back, and the immediate onset of pain. Plaintiff's testimony on this issue is found to be credible.
4. Plaintiff completed his workday, and then went to the office of defendant-employer. Plaintiff testified that he did not report the incident when he arrived at the office because no one was present. The residence of defendant-employer's owner is across a driveway from the office. However, plaintiff did not go to the residence to report any incident or injury on 19 December 2002.
5. Plaintiff and his wife both testified that he had no prior history of back problems prior to the date in question.
6. Defendants contend that plaintiff's testimony that his back injury is work-related is not credible as he failed to immediately report the 19 December 2002 injury to defendant-employer. In support of its contention, defendant-employer presented the testimony of co-worker Felix Romero, Secretary Carol Wilder, Donald Alligood, Larry Hardee, Blanche Hardee, and Leland Cutler.
7. The co-worker with whom plaintiff was working on 19 December 2002 was Mr. Felix Romero, who testified through an interpreter. Mr. Romero confirmed that on the date in question, he and plaintiff were lifting an air conditioning unit onto blocks. Mr. Romero further testified that he did not observe plaintiff having any difficulties with his back, and that plaintiff did not mention to him any incident or hurting his back. Plaintiff acknowledged during his testimony that he did not tell Mr. Romero he had injured his back on 19 December 2002. The fact that plaintiff did not report an injury to Mr. Romero on 19 December 2002 is given little weight in light of the language and communication difficulties.
8. Plaintiff's wife, Mrs. Delphia Beacham, testified that plaintiff informed her when he arrived home on 19 December 2002, that he had injured his back at work. Mrs. Beacham further testified that on that date, she attempted to telephone defendant-employer's residence to report his injury. The wife of defendant-employer's owner, Mrs. Blanche Hardee, testified that she never received a telephone call from plaintiff or plaintiff's wife on the night of 19 December 2002.
9. At the time of the 19 December 2002 incident, plaintiff was suffering from a severe viral illness with head and chest congestion, fever, body aches, and coughing. On 20 December 2002, with his viral symptoms worsening, plaintiff sought medical treatment from Family Medical Care. Plaintiff testified that he was experiencing pain throughout his entire body at that time. Ms. Carol Phelps, an x-ray technologist, was the individual who first spoke with plaintiff when he arrived at Family Medical Care. Plaintiff reported to Ms. Phelps that he had head and chest congestion, fever, dizzy spells, a cough, a burning throat and that his chest was hurting from coughing.
10. Mrs. Beacham testified that on 20 December 2002, she telephoned defendant-employer and reported to defendant-employer's secretary, Carol Wilder, that plaintiff had injured his back at work the previous day. Contrary to Mrs. Beacham's testimony, Ms. Wilder testified that although she had spoken with Mrs. Beacham on 20 December 2002, she only reported plaintiff's viral illness.
11. Physician's Assistant Dennis Czuchra of Family Medical Care diagnosed plaintiff with bronchitis and advised plaintiff to rest. Plaintiff rested over the weekend, but returned to Family Medical Care on 23 December 2002 with extreme vertigo and lower back pain. P.A. Czuchra's medical notes indicate that plaintiff's chest symptoms had improved but plaintiff was now suffering from lower back pain. P.A. Czuchra also noted that plaintiff had bilateral paraspinal muscle spasm, tenderness to palpation over the spine and reduced range of motion of the spine. Plaintiff was prescribed Celebrex and advised to use moist heat on his back and continue to rest.
12. On the morning of 26 December 2002, plaintiff presented to defendant-employer's office. Present at the office on that date were Mr. Alligood, Mr. Hardee, Mrs. Hardee, Mr. Cutler and Ms. Wilder. Plaintiff testified that he informed these individuals that he injured his back while lifting an air conditioning unit on 19 December 2002. Contrary to plaintiff's testimony, these individuals testified that plaintiff did not report injuring his back at work while he was present at the office on 26 December 2002; however, based on their testimony, plaintiff did report he had a back injury or that his back was hurting. Mr. Alligood and Ms. Wilder further testified that on that morning, each specifically asked plaintiff whether he had hurt his back at work, and that plaintiff stated he had not. Additionally, Mr. Alligood testified that although plaintiff appeared to be in pain, plaintiff attributed his back pain to bone spurs. Mr. Cutler also testified that plaintiff appeared to be in pain, and did report that he was hurting and sick, and that he planned to seek medical attention, but did not request authorization from defendant-employer.
13. On 26 December 2002, plaintiff again returned to Family Medical Care. P.A. Czuchra's medical notes indicate that plaintiff's back pain was worsening and radiating into his legs accompanied by numbness. His medical notes further indicated that plaintiff's worsening and now severe back pain had persisted for more than one week, since lifting a heavy air conditioner at work. A lumbar spine x-ray was ordered, which indicated that plaintiff had hypertrophic changes of the lumbar spine with interspace narrowing at L2-3. Following a Kenalog injection, plaintiff was prescribed Steripred, Percocet, Flexoril and "rest." Plaintiff was placed out of work pending his follow-up appointment on 30 December 2002 and was referred to physical therapy.
14. Beginning 27 December 2002, plaintiff commenced physical therapy at Family Medical Care. Due to lack of insurance coverage, physical therapy was discontinued on 7 January 2003 after three sessions without significant improvement.
15. On 30 December 2002, plaintiff again presented to defendant-employer's office, where Mr. Leland Cutler, plaintiff's direct supervisor, was present. Plaintiff told Mr. Cutler he did not think he could work because he was hurting so bad that he had to go back to the doctor. There was no discussion about filing a workers' compensation claim. Mr. Cutler testified that plaintiff never mentioned being injured as the result of any work-related incident. Mrs. Hardee was also present and she testified that she again asked plaintiff whether he had injured his back while working, and that plaintiff stated his back injury was not work-related.
16. On 1 January 2003, plaintiff "lost feeling" in his right leg and sought treatment at Beaufort County Hospital, Emergency Department. He was treated by Nina Ward, M.D. for complaints of weakness in his right side. Dr. Ward's medical notes indicate plaintiff had pulled his back about two weeks prior. Dr. Ward ordered tests that kept plaintiff at the hospital for much of the day. Plaintiff was released to go home where he stayed in bed because he was hurting and could not bear much weight on his right leg.
17. On 3 January 2003, plaintiff completed a Form 18, Notice of Accident to Employer and plaintiff's wife delivered the form to defendant-employer on that date. Mrs. Hardee testified that defendant-employer received plaintiff's Form 18.
18. On 16 January 2003, Edward L. Birdsong, M.D. of Pamlico Orthopedic Associates, examined plaintiff. Plaintiff gave Dr. Birdsong a history of experiencing back pain since lifting an air conditioning unit on 19 December 2002. Dr. Birdsong noted that plaintiff had degenerative changes in his lumbosacral spine with an acute flare-up at work and that conservative treatment had not been beneficial to plaintiff. He also noted that plaintiff suffered from intermittent radicular-type symptoms on his right side. Dr. Birdsong recommended an MRI and prescribed Bextra and Vicodin.
19. The MRI was performed at Beaufort County Hospital on 31 January 2003. The results showed canal narrowing with disc bulges at L3-L4 and L4-L5. Plaintiff returned to Dr. Birdsong on 13 February 2003, with continued lower back pain and leg pain. Plaintiff was referred for epidural steroid injections. Patrick Riley, M.D. at Beaufort County Hospital on 25 February 2003, performed the first injection. On 6 March 2003, plaintiff returned to Dr. Birdsong, who noted that plaintiff had received one epidural injection, but suffered a reaction to the injection and was unable to tolerate further treatment. Dr. Birdsong referred plaintiff for further evaluation.
20. Defendant-employer terminated plaintiff's employment in February, 2003.
21. On 12 March 2003, plaintiff was evaluated by Kurt Voos, M.D. of the Center for Scoliosis and Spinal Surgery for complaints of lower back pain and numbness and tingling in his left foot. On examination, Dr. Voos noted tenderness to spinal palpation from L4 to S1 and decreased range of motion of the back. Dr. Voos further found evidence of disk bulges at L3-4 and L4-5 with degenerative disk disease and resultant central stenosis, which "wasn't too impressive" given plaintiff's age. Dr. Voos referred plaintiff for physical therapy five days a week for four weeks.
22. On 19 March 2003, plaintiff began physical therapy at Beaufort County Hospital, Physical Therapy Department. The back evaluation completed at the first appointment indicated that plaintiff hurt his back lifting an air conditioning unit, suffering immediate pain. The therapist also noted that plaintiff suffered from bronchitis at the same time. Plaintiff was seen on four occasions ending 26 March 2003 with no significant improvements. The therapist report sent to Dr. Voos indicated that plaintiff was unable to tolerate supine position strengthening exercise and that he appeared to be in extreme pain most of the time.
23. Plaintiff returned to Dr. Voos on 26 March 2003 with increasing leg pain and unchanged back pain. Dr. Voos recommended that plaintiff undergo a CT myelogram and flexion and extension x-rays. The recommended studies were performed on 28 March 2003. The myelogram showed a disc bulge at L5-S1 and disc herniation at L4-L5 with multi-level spondylosis.
24. On 5 June 2003, plaintiff was evaluated at the Family Practice Center at Brody School of Medicine, East Carolina University. He presented with complaints of chronic back pain since a lifting injury in December 2002, along with other unrelated health problems.
25. Plaintiff returned to Dr. Voos on 9 June 2003. At that time, Dr. Voos reviewed his CT myelogram results, noted that plaintiff's pain had significantly improved and recommended that plaintiff go ahead and live with his pain as long as he could. At such time that plaintiff can no longer live with his pain, Dr. Voos opined that he would be a candidate for a decompression fusion procedure.
26. On 3 July 2003, plaintiff returned to the Family Practice Center and was examined by Nicole Symons, M.D. Dr. Symons noted that plaintiff continued to suffer from mid-line low-back pain accompanied by numbness and tingling in his right leg and prescribed Ultram for his pain. Plaintiff again returned to the Family Practice Center on 24 July 2003 with continued back pain since the work-related incident and was prescribed Naprosyn for his pain.
27. Defendants contend that plaintiff did not sustain a work-related injury on 19 December 2002. Plaintiff's testimony that he injured his back lifting an air conditioning unit while working for defendant-employer on 19 December 2002 is accepted as credible.
28. Plaintiff has proven by the greater weight of the evidence that his 19 December 2002 lifting incident caused his back condition including pain, radicular symptoms and leg numbness for which he sought treatment from a number of medical providers.
29. Dr. Voos was of the opinion that plaintiff's pain was brought on by the lifting incident and that, at worst, the lifting incident aggravated plaintiff's back condition. Similarly, P.A. Czuchra opined that plaintiff "certainly may have injured himself that day and that could have been his causative event."
30. Dr. Birdsong opined to a reasonable degree of medical certainty that plaintiff's back condition was caused by lifting the air conditioning unit on 19 December 2002. Upon further questioning, Dr. Birdsong also opined that even if plaintiff's back condition was not caused by lifting the air conditioning unit, the lifting incident at least aggravated plaintiff's degenerative back condition; and that the lifting incident was more likely to cause an aggravation or exacerbation of the back condition than coughing would. Dr. Birdsong testified that the bronchitis may have superseded plaintiff's back symptoms and that it is common for a patient to have immediate discomfort from an injury followed by a period of no particular bad symptoms.
31. On 19 December 2002, plaintiff sustained an injury to his back arising out of and in the course of his employment with the defendant-employer as a direct result of a specific traumatic incident of the work assigned while lifting the end of an air conditioning unit.
32. Although there are no medical notes taking plaintiff out of work after 30 December 2002, the greater weight of the evidence including plaintiff's level of pain, need for epidural injections, extensive testing, and physical therapy, supports plaintiff's testimony that he has been physically unable to work as a result of his injury since 19 December 2002. On 9 June 2003, plaintiff's condition stabilized to the point that Dr. Voos recommended he live with his pain as long as he could; however, Dr. Voos did not have any information on having released plaintiff to return to work. Plaintiff testified that his back hurts all the time and he loses feeling in his legs and they go right out from under him. He needs a cane from time to time, and receives social security disability benefits. Due to plaintiff's physical limitations, age (which was 61 at the time of hearing before the Deputy Commissioner), limited education (6th grade), difficulty with reading and writing and the type of work he did for defendant-employer (heavy labor), the Full Commission finds that it would be futile for plaintiff to look for suitable employment.
33. The Full Commission finds that defendant-employer had written notice of plaintiff's injury on 3 January 2003, approximately two weeks after the injury occurred and within the time period prescribed by N.C. Gen. Stat. § 97-22. Defendant-employer had actual notice that plaintiff had injured his back at least by 26 December 2002 and that plaintiff required medical treatment. Plaintiff was hurting all over, which he attributed to his viral infection, when he sought medical treatment on 20 December 2002; therefore little weight is given to the absence of any reference to, or report of back pain or injury in plaintiff's medical records of 20 December 2002.
34. Plaintiff's medical treatment for his back after 19 December 2002 and his possible need for surgery are causally related to his compensable back injury of 19 December 2002.
35. As a result of his 19 December 2002 injury, plaintiff was incapable of working in any capacity from 19 December 2002 through the date of hearing before the Deputy Commissioner and continuing.
36. Plaintiff's average weekly wage was $434.29, yielding a compensation rate of $289.54.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 19 December 2002, plaintiff sustained a compensable injury to his back arising out of and in the course of his employment with the defendant-employer as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's injury of 19 December 2002, either caused plaintiff's disabling back condition or aggravated a pre-existing condition and is compensable under the North Carolina Workers' Compensation Act. Smith v.Champion Int'l, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999).
3. Plaintiff gave defendant-employer timely notice of his injury pursuant to N.C. Gen. Stat. § 97-22.
4. Plaintiff's average weekly wage is $434.29. The resulting compensation rate is $289.54. N.C. Gen. Stat. § 97-25(2).
5. As a result of his back injury of 19 December 2002 and resulting radicular back pain, right side weakness and leg pain and numbness, plaintiff was incapable of earning wages in any employment from 19 December 2002 through the date of hearing before the Deputy Commissioner and continuing and is entitled to temporary total disability compensation during said period. N.C. Gen. Stat. §§ 97-2(9); 97-29.
6. Due to plaintiff's physical limitations, his age, his limited education, his difficulty with reading and writing and the type of work he did for defendant-employer, it would be futile for plaintiff to look for suitable employment. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Defendants are obligated to pay for all of plaintiff's reasonably required medical treatment resulting from his back injury of 19 December 2002, including past and future treatment, for so long as such treatment is reasonably required to effect a cure, provide relief and/or lessen his disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $289.54 per week from 19 December 2002 through the date of hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission, subject to an attorney fee awarded hereafter. Any compensation that has accrued shall be paid to plaintiff in one lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred for plaintiff's reasonably required medical treatment to his back for so long as such treatment tends to effect a cure, provide relief or to lessen his period of disability when these bills have been approved according to procedures adopted by the Industrial Commission.
3. An attorney fee of 25% of the compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's attorney and shall be paid as follows: 25% of the accrued compensation due plaintiff shall be deducted and paid directly to plaintiff's attorney; thereafter plaintiff's attorney shall receive every fourth check from the compensation due plaintiff.
4. Defendants shall pay the costs of this action.
This the ____ day of August 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER